UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES M. HALL, | : | CIVIL NO. **1:06-CV-1627** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant | : | |

## <u>REPORT AND RECOMMENDATION</u>

I. Background and Procedural History.


The plaintiff, a federal prisoner proceeding *pro se*, commenced this action by filing a complaint on August 21, 2006. The defendant is the United States of America.  The plaintiff's complaint is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 & 2671 *et seq.*  The plaintiff's claim concerns the care he received while he was incarcerated at the United States Penitentiary - Canaan (USP-Canaan) in Waymart, Pennsylvania.  The plaintiff claims that staff at USP-Canaan failed to provide proper medical treatment for an infection of his gums and his periodontal disease.

On March 6, 2007, the defendant filed an answer to the complaint.

The plaintiff filed motions for the appointment of counsel and for the appointment of an expert, and those motions were denied.

On October 29, 2007, the defendant filed a motion for summary judgment, a statement of material facts, documents and a brief in support of its motion.  On December 10, 2007, the plaintiff filed a response to the defendant's statement of material facts, a brief in opposition to the motion for summary judgment, his own declaration and exhibits.  On December 21, 2007, the defendant filed a reply brief.

II.  Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its

motion and identifying those portions of the record which
demonstrate the absence of a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving
party may discharge that burden by "'showing'-- that is,
pointing out to the district court -- that there is an absence
of evidence to support the nonmoving party's case." *Id.* at 325.
Once the moving party has met its burden, the nonmoving party
may not rest upon the mere allegations or denials of its
pleading; rather, the nonmoving party must "set out specific
facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable
jury, considering the evidence presented, could find for the
non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94
(3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 249 (1986)).  A material factual dispute is a dispute
as to a factual issue that will affect the outcome of the trial
under governing law. *Anderson*, *supra*, 477 U.S. at 248.  In
determining whether an issue of material fact exists, the court
must consider all evidence in the light most favorable to the
non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d
56, 59 (3d Cir. 1988).

3

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III.  Material Facts.

The following material facts are either undisputed for purposes of the defendant's motion for summary judgment or, where disputed, taken from the plaintiff's version of the facts as set forth in his declaration.

The plaintiff's medical records indicate that as early as 1998 the plaintiff suffered from "moderate" periodontal disease. *Defendant's Statement of Material Facts in Support of*

4

*Motion for Summary Judgment* at ¶1 and *Plaintiff's Statement of Disputed Factual Issues* at ¶1.  During a periodontal examination on June 5, 1998, it was noted that the plaintiff is aware of his condition and that staff stressed brushing and flossing. *Id.* at ¶2.

     The plaintiff arrived at USP-Canaan on March 3, 2005. *Id.* at ¶9.

     From April 29, 2005 to October 2005, the defendant did not employ a dentist at USP-Canaan. *Plaintiff's Declaration.* at ¶17.

     While at USP-Canaan, the plaintiff first raised dental concerns on April 30, 2005, the day after he was placed in the Special Housing Unit (SHU) for thirty days for disciplinary reasons. *Defendant's Statement of Material Facts in Support of Motion for Summary Judgment* at ¶14 and *Plaintiff's Statement of Disputed Factual Issues* at ¶14.  The plaintiff was seen at sick call on April 30, 2005 in the SHU. *Id.* at ¶15.  He complained of bleeding gums and he stated that he needed to see a dentist. *Id.*  The plaintiff was seen by Kimberly Bucklaw, RN. *Plaintiff's Declaration* at ¶6 and *Doc. 74, Exhibit F.*  Bucklaw,

however, did not remove the plaintiff from his cell to examine him. *Plaintiff's Declaration* at ¶7.  She only examined the plaintiff through reinforced security doors and glass, making an accurate examination impossible. *Id.*  Bucklaw's examination did not reveal any of the plaintiff's symptoms - bleeding or swollen gums and loose teeth. *Id.* at ¶8.  The entry on the plaintiff's medical record made by Bucklaw indicates that no apparent problems were noted with the plaintiff's gums, that there was no bleeding and no edema. *Doc. 74 - Exhibit F, Defendant's Statement of Material Facts in Support of Motion for Summary Judgment* at ¶16 and *Plaintiff's Statement of Disputed Factual Issues* at ¶16.  The plaintiff was placed on the dental waiting list. *Id.*

On May 5, 2005, the plaintiff was seen in the SHU complaining of a toothache. *Id.* at ¶19.  Staff noted that there was no bleeding of the gums or gingival edema. *Id.* at ¶20.  The plaintiff was given Motrin for pain. *Id.*

From April 29, 2005 to May 23, 2005, the plaintiff made repeated complaints of pain and swollen gums. *Plaintiff's Declaration* at ¶13.  From the time of Bucklaw's examination of the plaintiff on April 30, 2005 until May 24, 2005, with the

6

exception of receiving two aspirins from a physician's
assistant on May 5, 2005, the plaintiff received no medical or
dental attention and staff did nothing to relieve the
plaintiff's pain. *Id.* at ¶¶11 & 12.  The plaintiff was in pain
and discomfort due to an infection in his upper front teeth and
he was not given anything for his pain. *Id.* at ¶22.

On May 24, 2005, the plaintiff was examined by the
Chief Dental Officer from FCI Fort Dix, who was providing
staffing assistance to USP-Canaan. *Id.* at ¶22.  The plaintiff
complained of discomfort in his upper front teeth and of his
gums bleeding when he brushes. *Id.* at ¶23.  The dentist noted
that the "max. anteriors show gum recession" and that the
plaintiff should receive oral hygiene when staff is on board.
*Id.* at ¶24.  The dentist diagnosed the plaintiff's with a gum
infection. *Plaintiff's Declaration* at ¶14.  The dentist
prescribed Tylenol for pain, Tetracycline, and a 30% peroxide
rinse. *Defendant's Statement of Material Facts in Support of
Motion for Summary Judgment* at ¶25 and *Plaintiff's Statement of
Disputed Factual Issues* at ¶25.  The Tetracycline worked and
the plaintiff felt relief within a few days. *Id.* at ¶26.  He
had no further problems with bleeding gums or his teeth feeling
loose. *Id.* and *Plaintiff's Deposition* at 18-19.

7

On June 23, 2005, the plaintiff requested information from Health Services on treating periodontal disease. *Defendant's Statement of Material Facts in Support of Motion for Summary Judgment* at ¶30 and *Plaintiff's Statement of Disputed Factual Issues* at ¶30.  His request was referred to the dentist. *Id.* at ¶31.

From June 23, 2005 to July 24, 2005, the plaintiff repeatedly requested dental assistance due to severe discomfort in his gums due to his advanced periodontal disease. *Plaintiff's Decl.* at ¶15.  His requests were denied. *Id.*

On August 9, 2005, the plaintiff submitted an informal resolution form complaining that he was not receiving attention for his periodontal disease and inquiring about the status of planned treatment. *Id.* at ¶35.  Staff responded to the informal resolution request on August 9, 2005 repeating the treatment plan from the plaintiff's dental examination on May 24, 2005. *Id.* at ¶36.  The plaintiff was told that the dentist recommended oral hygiene when staff was on board. *Id.* at ¶37. The Assistant Health Services Administrator also noted that the plaintiff had a history of refusing treatment for periodontal

8

disease in November of 2003 and noted that the plaintiff's case would be referred to a contract dentist at his next visit for a treatment recommendation. *Id.* at ¶38.

On August 25, 2005, Health Services staff made an administrative note that the plaintiff had been seen in the SHU for oral health instructions due to his complaints of lack of attention and his fear that his teeth will fall out. *Id.* at ¶41.  Staff explained to the plaintiff that he should maintain his oral health status and that he would receive a complete examination, cleaning and x-rays when he leaves the SHU in approximately 10 months. *Id.* at ¶42.  Staff noted that the plaintiff "does have perio" but that it "doesn't seem to be a threat to his detention while he is here in SHU." *Id.* at ¶43. The plaintiff was instructed to brush 3-4 times daily and to make sure that no food debris was in his mouth. *Id.* at ¶44.

On October 27, 2005, the plaintiff was seen by a dentist from FCI-Fort Dix for a follow up to the May 24, 2005 visit and in reference to the health of the plaintiff's anterior teeth. *Id.* at ¶47.  The dentist noted that the plaintiff had "generalized advanced perioditis" and he set forth the following treatment plan: 1) periacpical [full mouth

x-ray]; 2) gross debridement; 3) quad scaling; and 4) osseus necrotomy and antibiotic treatment. *Id.* at ¶48.  The plaintiff did not receive treatment in accordance with the treatment plan set forth by the dentist. *Plaintiff's Decl.* at ¶26.

On October 28, 2005, the plaintiff submitted a request to Health Services staff seeking information on treating periodontal disease and other health concerns affected by periodontal disease. *Id.* at ¶49.  Staff responded that they had previously answered the plaintiff's questions about periodontal disease on August 25, 2005 and that the same issues had been discussed with the dentist just the day before. *Id.* at ¶50. The plaintiff was notified that dental visits in the SHU are only for emergency purposes and that if/when he was released from the SHU staff would further discuss "perio" with him and "begin quad scaling." *Id.* at ¶51.

On January 5, 2006, the plaintiff was transferred to USP-Beaumont, Texas. *Id.* at ¶56.

IV. Discussion.

The plaintiff's claim is a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346 & 2671 *et seq.*

"The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2004)(quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). Federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). A person may sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison by reason of

11

the negligence of a government employee. *United States v. Muniz*, 374 U.S. 150 (1963).

Under the FTCA, the law of the place where an act or omission occurs is to be applied. 28 U.S.C. § 1346(b). Thus, in determining whether the United States owes a duty to the plaintiff, whether the United States breached that duty and whether that breach was the proximate cause of the plaintiff's injuries, the law of Pennsylvania ordinarily applies. *Hossic v. United States*, 682 F.Supp. 23, 24-25 (M.D.Pa. 1987). However, 18 U.S.C. § 4042 governs the United States' duty of care in cases involving injury to federal prisoners. *Id.* at 25; *Turner v. Miller*, 679 F.Supp. 441, 443 (M.D.Pa. 1987). The duty of care as provided by 18 U.S.C. § 4042 is that of ordinary diligence. *Hossic, supra,* 682 F.Supp. at 25; *Turner, supra*, 679 F.Supp. at 443.

The plaintiff claims that he was not provided timely and appropriate dental care. The plaintiff's claim is a malpractice claim.

In order to establish a prima facie case of medical malpractice, a plaintiff must establish: (1) a duty owed by the

medical provider to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) damages suffered by the patient that were a direct result of that harm. *Mitzelfelt v. Kamrin*, 584 A.2d 888, 891 (Pa. 1990).

The defendant argues *inter alia* that the plaintiff can not establish his claim because he does not have an expert witness.

Because the negligence of a medical provider "encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003). There is a very narrow exception to the requirement of expert testimony "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons." *Id.* (quoting *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997)).

The plaintiff contends that he does not need an expert witness because his case fits within the exception to the requirement of expert testimony.  The plaintiff's claim is based on two alleged failures on the part of the staff at USP-Canaan.  We will address each alleged failure in turn.

First, the plaintiff complains about a gum infection which was not treated until May 24, 2005 when he saw the dentist.  The dentist provided treatment and the plaintiff admits that the treatment was effective.  The plaintiff is not claiming that the dentist was negligent but rather that staff at USP-Canaan was negligent in not referring him to a dentist earlier.  However, it is undisputed that on April 30, 2005, the plaintiff was seen by Kimberly Bucklaw, RN. *Plaintiff's Declaration* at ¶6 and *Doc. 74, Exhibit F.*  The entry on the plaintiff's medical record made by Bucklaw indicates that no apparent problems were noted with the plaintiff's gums, that there was no bleeding and no edema. *Doc. 74 - Exhibit F*, *Defendant's Statement of Material Facts in Support of Motion for Summary Judgment* at ¶16 and *Plaintiff's Statement of Disputed Factual Issues* at ¶16.  The plaintiff was placed on the dental waiting list. *Id.*  The plaintiff argues that

14

Bucklaw's examination was inadequate and that her conclusion
that there was no problem requiring immediate attention was
wrong.  But whether Bucklaw's examination was adequate (i.e.
whether she deviated from the standard of care) is a question
the answer to which is not so obvious as to fit within the
exception to the requirement of expert testimony.  Therefore,
since the plaintiff does not have an expert witness to support
this claim, the defendant is entitled to summary judgment on
this claim.

     Second, the plaintiff claims that staff at USP-Canaan
failed to provide the treatment recommended by the dentists for
his periodontal disease.  The plaintiff was notified that
dental visits in the SHU are only for emergency purposes and
that if/when he were to be released from the SHU his treatment
would begin.  Whether the treatment recommended by the dentists
was of such a nature that it could not wait until the plaintiff
was released from the SHU and whether the delay in providing
the treatment deviated from the standard of care and caused the
plaintiff harm are not matters so simple or obvious as to be
within the range of experience and comprehension of non-
professional persons.  Accordingly, expert testimony is
required to establish this claim.  Since the plaintiff does not

15

have an expert witness to support this claim, the defendant is entitled to summary judgment on this claim.

V. Recommendations.

Based on the foregoing, it is recommended that the defendant's motion (doc. 63) for summary judgment be granted and that the case file be closed.

**_/s/ J. Andrew Smyser_**
J. Andrew Smyser
Magistrate Judge

Dated:  January 7, 2008.